VINCE RABAGO, Esq.
VINCE RABAGO LAW OFFICE PLC
2135 E. Grant Road,  Tucson, Arizona 85719
State Bar No. 015522
Facsimile:  (888) 371-4011
Email: vince@vincerabagolaw.com
Telephone: (520) 955-9038

Attorney for Plaintiff Kakarala

## IN THE UNITED STATES DISTRICT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anne Mercy Kakarala,<br><br>                    Plaintiff,<br><br>   vs.<br><br>Wells Fargo Bank, N.A.,<br><br>                    Defendant. | Case No.  4:10-CV-00208-TUC-FRZ<br><br>**THIRD AMENDED COMPLAINT**<br><br>DEMAND FOR JURY TRIAL<br><br><br> Hon. Frank R. Zapata |

## GENERAL ALLEGATIONS

1.  Plaintiff Anne Mercy Kakarala alleges the following:

### INTRODUCTION

2.  Plaintiff seeks justice for Wells Fargo's misconduct and foreclosure of Plaintiff 's home in a process that began in December 2008, and ended in July 2009, which outrageously deprived Plaintiff of her home and property in violation of her due process rights.

3.  Wells Fargo intentionally warped and thwarted the minimum truncated due process requirements which exist and are required in order for a private entity to use the Arizona statutory process to foreclose on a home through a private

trustee sale, and knowingly engaged in conduct which deprived Plaintiff of adequate notice and deprived Plaintiff of being able to access a judicial process to prevent the deprivation of her home in a foreclosure sale.  Wells Fargo, while availing itself of the statutory sale process under Arizona law, acted under color of state law by altering the contemplated statutory process and scheduled sale set by its trustee.  Wells Fargo then requested and continued to accept payments from Plaintiff for another six months despite commencing and continuing the foreclosure process, while Wells Fargo and/or its agents engaged in deceptive conduct about the sale not occurring, and about the status of her loan and a loan modification, which thereby deprived Plaintiff of her due process right to notice and deprived Plaintiff her statutory right to seek to stop the sale through a court action and injunction. This deprived Plaintiff of her due process rights such as the right and opportunity to seek a court order and present any objections or defenses to the sale before being deprived of her property.

4. Wells Fargo further acted under color of state law by scheduling the sale to be held on state or county property, outside the East door of the Pima County Superior Court courthouse, and on information and belief Wells Fargo used state property multiple times to orally delay the sale while Wells Fargo assured Plaintiff that all was fine and they were working with her to modify her loan, and Wells Fargo's agent then held the sale on state or county

courthouse property without providing Plaintiff notice of the new date after informing her there would be no sale.

5. Wells Fargo's misconduct cost Plaintiff her hard-earned family home, and resulted in other injury and damages. Wells Fargo deprived Plaintiff of her property in violation of her Constitutional due process rights, deprived her of rights guaranteed under federal law and regulations, and deprived Plaintiff of her rights under state law.

6. Accordingly, Defendant is liable for violating Plaintiff's rights, including her Constitutional due process rights, under 42 U.S. Code § 1983.

7. Wells Fargo also breached the private contracts with Plaintiff that expressly incorporated federal HUD regulatory restrictions and contractually precluded acceleration or foreclosure not in compliance with such regulations, including but not limited to violating the requirement to have a face-to-face meeting with Plaintiff, before foreclosing. The breach of contract entitles Plaintiff to appropriate contract damages and attorney fees, and under the circumstances, punitive damages as well.

**BACKGROUND**

8. Defendant Wells Fargo's wrongful conduct occurred during a period of time when federal regulators investigated and concluded that certain federally regulated financial institutions, including Defendant Wells Fargo, had been engaging in unsafe and unsound foreclosure processes that violated federal and state law.

3

9.  In 2010, the Federal Reserve Board, the Office of the Comptroller of the Currency, and the Office of Thrift Supervision conducted on-site reviews of foreclosure processing at 14 federally regulated mortgage servicers, including Wells Fargo Bank N.A., and reviewed 2,800 foreclosure files for foreclosures pending during January 1, 2009 and December 31, 2010.  Upon completing their investigation review, the federal agencies issued findings that "found critical weaknesses in servicers' foreclosure governance processes, foreclosure document preparation processes, and oversight and monitoring of third-party vendors, including foreclosure attorneys. While it is important to note that findings varied across institutions, the weaknesses at each servicer, individually or collectively, resulted in unsafe and unsound practices and violations of applicable federal and state law and requirements." (See Exh. A, Exec. Summary, at 2-3; http://www.federalreserve.gov/boarddocs/rptcongress/interagency_review_foreclosures_20110413.pdf.)   In April of 2011, these three federal regulatory agencies issued their official findings in a government report titled *Interagency Review of Foreclosure Policies and Practices* conducted by the Federal Reserve Board, the Office of the Comptroller of the Currency, and the Office of Thrift Supervision, and noted that most of these institutions entered formal consent orders regarding their conduct, including Wells Fargo Bank, N.A.  (*Id.*)

10. On March 12, 2012, the United States along with 49 states' attorneys general sued Wells Fargo and other major US banks in District of Columbia Case No. 1:12-cv-00361-RMC. The complaint alleged, in relevant part, that Wells Fargo and others were guilty of: providing false or misleading information to consumers while referring loans to foreclosure during the loan modification application process; providing false or misleading information to consumers while initiating foreclosures where the borrower was in good faith actively pursuing a loss mitigation alternative offered by Wells Fargo; providing false or misleading information to consumers while scheduling and conducting foreclosure sales during the loan application process and during trial loan modification periods; misrepresenting to borrowers that loss mitigation programs would provide relief from the initiation of foreclosure or further foreclosure efforts; engaging in inappropriate "dual-tracking" foreclosure and loan modification activities, and failing to communicate with borrowers with respect to foreclosure activities.

11. Wells Fargo settled the suit in a simultaneous Consent Judgment for $1 billion in cash, along with about $4.3 billion in other forms of loan relief, and promises formalized in court orders to treat customers better. This Consent Judgment over alleged wrongful practices is called the National Mortgage Settlement ("NMS"). Alleged harmful practices included "dual tracking" - representing a borrower is in a loan modification process while simultaneously pursuing foreclosure. (Exh. B, Executive Summary:

https://d9klfgibkcquc.cloudfront.net/NMS_Executive_Summary-7-23-2012.pdf.)  Among other things, Wells Fargo was required to avoid dual tracking its borrowers and it was obligated to give notice of continued foreclosure sale dates in writing to the borrower.

## PARTIES

12. Plaintiff Anne Mercy Kakarala is a married woman residing in Tucson, Arizona.

13. Defendant Wells Fargo Bank N.A. (Wells Fargo), is a federally chartered national banking institution headquartered in South Dakota, that does business in Pima County, Arizona, and which was the owner and/or was the loan servicing company for Mrs. Kakarala's home loan, secured by the home described above.

## JURISDICTION AND VENUE

14. This Court has jurisdiction.  28 U.S.C. §§ 1331 and 1343.  Venue is proper as the alleged acts occurred in this District.

15. The demand or value of the property in controversy, exclusive of interests or costs, also meets the Court's jurisdictional limits.

## FACTS

16. Plaintiff is a U.S. citizen originally from India, and English is not her native language.

17. When Plaintiff arrived in the United States, Plaintiff and her husband worked for years at $3.00 an hour to save money and make a better life for their family.

18. Plaintiff and her husband purchased the home at 1152 North Thunder Ridge Drive, Tucson, AZ 85745 from U.S. Homes in  for approximately $111,142.00.

19. Plaintiff put $10,000 down as a down payment for her home, and paid for another $5,000 in upgrades at the time of purchase.

20. Plaintiff subsequently invested additional funds in the property in the amount of approximately $60,000.00.

21. Plaintiff obtained her loan through First Magnus Financial Corporation, an Arizona Corporation, 5285 E. Williams Circle, Ste. 2000, Tucson AZ 85711, an entity that was regulated under Arizona law by the Arizona Department of Financial Institutions.

22. A Deed of Trust identifying First Magnus as the Lender (and beneficiary) was recorded on March 31, 2004.  (Exh. C.)

23. Although First Magnus was listed as the Lender, Mortgage Electronic Registration Systems, Inc., a Delaware company, was listed as the Beneficiary, solely as the nominee for the Lender.

24. Plaintiff's home loan was a government-backed Federal Housing Administration loan, also referred to as a "HUD" (Housing and Urban Development agency) loan.

7

25. The Secretary of HUD has adopted certain federal government regulations related to the administration of such loans by entities such as Wells Fargo bank.

26. The HUD "case" number for Plaintiff's FHA/HUD loan is listed on the face of the loan documents, including the Deed of Trust that was signed on March 26, 2004, and later recorded on March 31, 2004.  The Deed of Trust asserted that it was signed on the same date as the promissory note.

27. The Deed of Trust states that it is "FHA Case No. 022-1792828-703", presumably meaning it is a Federal Housing Administration loan, referred to as a HUD loan. (Exh. C, page 2 of the Deed of Trust.)

28. The loan obligated Wells Fargo, if required by the HUD Secretary, to make insurance payments to the Secretary of Housing and Urban Development, referred to as the "Secretary" in the rest of the contract.  (Exh. C, at p. 3.)

29. The Deed of Trust (Exh. C at pp. 5-6), references and incorporates other obligations mandated by HUD regulations, which thus became contractual obligations enforceable by Plaintiff.

30. Pages 5 and 6 of the Deed of Trust state the following, in pertinent part:

> 8.   Lender may collect fees and charges authorized by the Secretary.
> 9.   Grounds for Acceleration of the Debt.
>         (a) Default. Lender may, except as limited by regulations issued by the Secretary, in case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
>                 (I)  Borrower defaults....

8

….

….

(b) Regulations of HUD Secretary.  In many circumstances regulations issued by the HUD Secretary will limit lenders rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  *This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.* (Exh. C, at page 5.)

31. Term 9(b) of the Deed of Trust states that "This Security Instrument does not authorize acceleration or foreclosure if not permitted by the regulations of the Secretary."

32. In Arizona, contractual "Deeds of Trust must be strictly construed in favor of the borrower."  *In re Krohn*, 203 Ariz. 205, 208, at ¶ 10 (2002)

33. In subsequent non-uniform covenants in the contract, the Deed of Trust further contemplates joint action by the federal agency, stating that:

> If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment, in full under Paragraph 9, the Secretary may invoke the non-judicial power of sale as provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") … by requesting a foreclosure commissioner designated under the Act to commence foreclosure …. (Exh. C, page 8.)

34. The loan ("Note") similarly was marked with the same "FHA Case No.", and included similar HUD regulation restrictions incorporated.  (Exh. D.)

35. For example, the Note stated in Term 6(b) that if a borrower defaulted, that "the Lender may, except as limited by regulations of the Secretary in the case of defaults, require immediate payment in full of the principal balance remaining due.... In many circumstances regulations issued by the Secretary

will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, 'Secretary' means the Secretary of Housing and Urban Development or his or her designee." (Exh. D.)

36. As relevant here, the restrictions required a face to face meeting and other obligations before commencing or completing any foreclosure, none of which occurred here.

37. 24 C.F.R. § 203.606(a) mandates "[*b*]*efore initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met.*" (Italics added.)

38. 24 C.F.R. § 203.606(a) is codified in Subpart C of Part 203, which is captioned "Servicing Responsibilities." The first section in Subpart C is 24 C.F.R. § 203.500, stating that "[i]t is the intent of the Department that *no mortgagee shall commence foreclosure ... until the requirements ... have been followed*." (Emphasis added.)

39. In addition, the Regulation itself 24 C.F.R. § 203.604(b) provides that "[t]he mortgagee *must have a face-to-face interview* with the mortgagor, or make a reasonable effort to arrange such a meeting, *before three full monthly installments due on the mortgage are unpaid*." 24 C.F.R. § 203.604(b) (Emphasis added). This Regulation is codified in Subpart C, and was a restriction incorporated by reference into the contract, and therefore was

requirement that Wells Fargo had to meet "[*b*]*efore initiating foreclosure*." 24 C.F.R. § 203.606(a) (emphasis added).

40. Shortly after Plaintiff's FHA/HUD loan was originated, the loan was purchased and/or serviced by Wells Fargo or its subsidiary agent Wells Fargo Home Mortgage, so the terms/restrictions applied to Defendant.

41. Defendant Wells Fargo did not abide by the government restrictions that were affirmatively and contractually incorporated into the Deed of Trust and Note.

42. Meanwhile, Plaintiff and her husband made regular payments for more than five years.

43. Due to illness and other hardships, Plaintiff and her husband fell behind on their payments to Wells Fargo.

44. In December 2008, Plaintiff recalls receiving a letter from Defendant Wells Fargo Bank N.A. informing her that she was behind on payments and that a foreclosure could result. (Exh. E.)

45. On December 28, 2008, Plaintiff called and spoke with a Wells Fargo representative, explained some of her circumstances, and asked what she could do to stop the process.

46. The Wells Fargo representative told Mrs. Kakarala that nothing was happening with any foreclosure, but that she would have to pay, and that her payments would have to be made immediately and made through something called Wells Fargo "Fastpay."

47. Accordingly, based on these representations, on or about December 28, 2009, Plaintiff Kakarala or her husband sent a payment to Wells Fargo, in the approximate amount of $1,000.00, although some of this may have included a fee to pay to send the payment.

48. However, on information and belief, on December 24, 2008, Jennifer Hamlin, an employee of Michael Bosco and Mark Bosco's law firm Tiffany & Bosco PA (Exh. F), but purportedly acting in the capacity of an Assistant Secretary of Mortgage Electronic Registration Systems, Inc., assigned the Deed of Trust from Mortgage Electronic Registration Systems, Inc. to Wells Fargo, and this Assignment of Deed of Trust was recorded at Sequence No. 20082500269 on December 26, 2008 in the Pima County Recorder's Office.   (Exh. G.) Hamlin's email address and phone number appear in the Tiffany & Bosco law firm's employee directory on or about that time period.  (Exh. F.)

49. On information and belief, on the same date of December 24, 2008, Wells Fargo Bank N.A., through attorney Mark S. Bosco acting under a purported "Limited Power of Attorney" for Wells Fargo Bank N.A., substituted his father Michael A. Bosco as the Trustee; the Substitution was recorded on December 26, 2008, at the next sequence of documents No. 20082500270 in the Pima County Recorder's Office. (Exh. H.) Michael A. Bosco and Mark Bosco were law partners in Tiffany and Bosco, PA.  (Exh. I.)

50. On information and belief, on the same date of December 24, 2008, Wells Fargo Bank N.A.'s newly substituted trustee Michael A. Bosco, signed a

Notice of Trustee's Sale for Kakarala's home, recorded on December 26, 2008, at very next sequence of documents at No. 20082500271 in the Pima County Recorder's Office.  (Exh. J.)

51. The recorded Notice of Trustee's Sale for Plaintiff's property stated that the Trustee would "sell the real property at public auction **on March 27, 2009, at 11:30 AM, outside the East door of the new Court's building, 110 W. Congress, Tucson, AZ** to the highest bidder for cash (in the forms which are lawful tender in the United States and acceptable to the Trustee, payable in accordance with A.R.S. 33-881A) …."

52. The Notice of Trustee's Sale lists "Wells Fargo Bank N.A." as the beneficiary, in care of the servicer "Wells Fargo Home Mortgage Inc., Attn: F/C Dept., 3476 Stateview Boulevard, Fort Mill, SC 29715."  It further states that the Beneficiary had accelerated the Note and declared the entire unpaid principal balance, and any other amounts due, immediately due and payable. (Exh. J.)

53. As such, Wells Fargo did not inform Plaintiff even though it had a foreclosure pending.

54. Plaintiff does not specifically recall receiving written legal notice of the Notice of Trustee's Sale being mailed from Michael S. Bosco.

55. On information and belief, Trustee Michael S. Bosco engaged in a practice of using his law firm Tiffany & Bosco's envelopes to send correspondence regarding his acts as Trustee, but the law firm Tiffany & Bosco was not the Trustee.

56. Some time in 2009, Plaintiff became aware there was a March 27, 2009 foreclosure sale date from speaking with representatives of Wells Fargo.

57. On information and belief, Wells Fargo provided her with the phone number for its agent and Trustee Michael Bosco, referring to it as Tiffany & Bosco.

58. On at least one occasion, Plaintiff Kakarala directly telephoned Wells Fargo's foreclosure Trustee's office using that phone number, as she became concerned about the previously scheduled foreclosure trustee sale date of March 27, 2009.

59. Plaintiff Kakarala wanted assurance that no foreclosure was scheduled because she had been in contact with the bank and was making payments, and a customer representative informed her something to the effect that "nothing was happening" and that "if the bank told you everything is fine because they [Wells Fargo] are working with you, then everything is okay and there is nothing to worry about."

60. Based on Wells Fargo's representative's and Trustee's representations, Plaintiff continued to make payments and understood no action would occur to sell her home.

61. Plaintiff or her husband made payments to Wells Fargo in late December 2008, January 2009, February 2009, March 2009, April 2009, May 2009, June 2009, and still has some of those records demonstrating the payments.  (Exh. K.)

14

62. Plaintiff continued be in contact with Wells Fargo Bank and/or its agent the servicer, about the loan and sought to apply for a loan modification, and received Wells Fargo correspondence stating she was being considered for loan modification.  (Exh. L.)

63. Plaintiff or her husband continued to make monthly payments using Wells Fargo's Fastpay, and utilized Western Union to do so on some, if not all occasions.  (Exh. K.)

64. Meanwhile, Wells Fargo's agent and foreclosure Trustee Michael Bosco did not hold the trustee sale on March 27, 2009, as scheduled under Arizona's Deed of Trust law.

65. Plaintiff or her husband continued to make payments well beyond the scheduled sale date and paid Wells Fargo in April 2009, May 2009, and June 2009.  (Exh. K.)

66. Plaintiff understood Wells Fargo was working with her on a loan modification, based on her interactions and correspondence from Wells Fargo. (Exh. L.)

67. Plaintiff sent requested loan documentation three separate times to Wells Fargo.

68. On information and belief, while Plaintiff Kakarala was out of the country in India, Well's Fargo Bank's trustee Michael Bosco sold the plaintiff's home and property at a trustee's sale purportedly held on July 28, 2009.  The Trustee's Deed reflecting this sale of Plaintiff's home was recorded on August 7, 2009,

at Sequence No. 20091520934 at the Pima County Recorder's Office.  The property was sold to Robin's Nest Properties LLC as the highest bidder, for the amount of $126,100.00.  (Exh. M.)

69. Wells Fargo's trustee affirmatively scheduled the sale to be held on state property, outside the East door of the Pima County Superior Court courthouse (falsely described in the Notice of Trustee's Sale as the new Courts building), and on information and belief used state property multiple times to orally delay the sale while Wells Fargo assured Plaintiff that all was fine and they were working with her to modify her loan, and Wells Fargo's agent then held the sale on state property without providing Plaintiff notice of the new date after informing her there would be no sale.

70. On information and belief, the same state and/or county courthouse property was used for a newspaper rack which contained a newspaper publication that is used by creditors such as Wells Fargo to publish Notices of Trustee's sales.

71. Plaintiff was shocked and distressed to learn that her home had been foreclosed.

72. Plaintiff was not even aware that a sale date for the property existed, in light of the defendant Wells Fargo Bank's direct representations to her, as well as her  prior communication with a representative of Wells Fargo's trustee Michael Bosco.

73. Plaintiff Kakarala, with assistance from her husband, even had sent loan modification information to Wells Fargo after the sale date, not knowing the sale had occurred.

74. Plaintiff's home was sold in a non-judicial foreclosure trustee sale process held on state or county property without adequate notice and without the opportunity to seek a court hearing and injunction due to Wells Fargo's affirmative conduct.

75. Wells Fargo engaged in an abusive "dual tracking" process by engaging in a loan modification process but simultaneously pursuing foreclosure, which oftentimes leaves the borrower "under the impression they are in line for a modification only to be hit by an auction notice ..." *See Hele Ku KB, LLC v. Bac Home Loans Servicing*, LP, 873 F.Supp.2d 1268, 1279 (D.C. Hawaii 2012).

76. The harm from "dual tracking" resulted in the practice being prohibited in the National Mortgage Settlement in 2012, it was legislatively prohibited in California by passage of the Homeowners Bill of Rights in 2013, and the practice was prohibited nationally by federal regulations of the Consumer Financial Protection Bureau effective in 2014.

77. Prior to 1971, Arizona law provided the full panoply of due process provided by a judicial state court proceeding for the foreclosures of mortgage loans, and lenders would have to actually sue a homeowner to foreclose on a mortgage.

78. After 1971, the Arizona Legislature amended Arizona law to create the "Deed of Trust" statutes to provide lenders the option of choosing an alternative out of court non-judicial process by which lenders can have an appointed trustee sell the property secured by the Deed of Trust after a default and acceleration, see A.R.S. 33-801 Et. Seq., provided that legal notice of the trustee's sale and default are properly effected and given to the borrower (recording, mailing, posting, and by publication), and the sale may be held no sooner than the 91st day after the recording of the Notice of Sale. See A.R.S. § 33-808.

79. Arizona courts have held that this statutory system provides only truncated due process, and so strict compliance with the statutory provisions is required. See *Patton v. First Federal Savings & Loan*, 118 Ariz. 473, 477; 578 P.2d 152, 156 (1978) ("Compared to mortgage requirements, the Deed of Trust procedures authorized by statute make it far easier for lenders to forfeit the borrower's interest in the real estate securing a loan and also abrogate the right of redemption after sale guaranteed under the mortgage foreclosure . . . The Deed of Trust statutes thus strip borrowers of many of the protections available under a mortgage. Therefore, lenders must strictly comply with the Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly construed in favor of the borrower."); *Schaeffer v. Chapman*, 176 Ariz. 326, 328; 861 P.2d 611, 613 (1993); *LeDesma v. Pioneer Nat'l Title Ins. Co.*, 129 Ariz. 171, 173; 629 P.2d 1007, 1009 (App. 1981); *CS&W Contractors, Inc. v.*

*Southwest Savings & Loan*, 175 Ariz. 55, 61; 852 P.2d 1239, 1245 (App. 1992).

80. A.R.S. § 33-810(B) provides that: "The person conducting the sale may postpone or continue the sale from time to time or change the place of the sale to any other location authorized pursuant to this chapter by giving notice of the new date, time and place by public declaration at the time and place last appointed for the sale. Any new sale date shall be a fixed date within ninety calendar days of the date of the declaration. After a sale has been postponed or continued, the trustee, on request, shall make available the date and time of the next scheduled sale and, if the location of the sale has been changed, the new location of the sale until the sale has been conducted or canceled and providing this information shall be without obligation or liability for the accuracy or completeness of the information. No other notice of the postponed, continued or relocated sale is required except as provided in subsection C of this section."

81. Wells Fargo and its agent made affirmative representations that no sale would occur, and took other affirmative actions like requesting and continuing to accept payments. These acts interfered with the statutory process allowing a foreclosure by trustee sale.

82. Under the circumstances, actual notice of a new sale date was required to be given to Plaintiff in order to satisfy the minimum truncated standards of due process.

83. Arizona law, A.R.S. § 33-811(C) further provides that a borrower must obtain a court order by 5:00 p.m. the day before a scheduled trustee's sale, and all defenses or objections not raised in an action resulting in the issuance of an injunction against the sale under Rule 65 are waived.  A.R.S. § 33-811(C) provides:  "The trustor, its successors or assigns, and all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to section 33-809 shall waive all defenses and objections to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. mountain standard time on the last business day before the scheduled date of the sale. A copy of the order, the application for the order and the complaint shall be delivered to the trustee within twenty-four hours after entering the order."

84. Because of Wells Fargo's and/or its agent's affirmative and intentional conduct, Plaintiff Kakarala was deprived of notice of the new sale date.

85. Because of Wells Fargo's and/or its agent's conduct, Plaintiff did not have adequate notice of the sale date or even that it had been merely postponed.

86. Because of Wells Fargo and/or its agent's conduct, Plaintiff was deprived of her opportunity to seek a hearing and/or opportunity to seek judicial process as required under Arizona law to stop such a sale and preserve objections or defenses to the sale.

87. Because of Wells Fargo and/or its agent's conduct, Plaintiff was deprived of her property in violation of her due process rights under the Constitution.

20

88. Plaintiff's home was taken as a result of Wells Fargo's actions and foreclosure sale.

89. Plaintiff's payments from December 2009, through July 2009 were taken from her as a result of Wells Fargo's actions and foreclosure sale.

90. Wells Fargo's actions caused other injury to Plaintiff and her family, including the loss of their small family restaurant business.

91. Plaintiff and her husband, who were owners of a small family run Indian food restaurant, ended up losing their business, which had to be turned over to a relative, due to the injury to their credit and inability to use credit.

**COUNT 1**

**DEPRIVATION OF RIGHT TO DUE PROCESS OF LAW (14th AMENDMENT)**

92. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth herein.

93. Plaintiff alleges that Wells Fargo, under the circumstances alleged herein, acted under color of state law in relation to its conduct.

94. Plaintiff alleges that Well's Fargo's intentional conduct described and alleged herein  deprived Plaintiff of state, federal, and constitutional rights.

95. Plaintiff alleges Well's Fargo's intentional conduct described above deprived Plaintiff of her state, federal, and constitutional rights, and deprived her of her right to Due Process of law as guaranteed by the Fourteenth Amendment of the U.S. Constitution.

96. As a result of Defendant's conduct, Defendant proximately caused damages to Plaintiff including the loss and deprivation of real and personal property, pain and suffering and mental and emotional distress.

97. Defendant acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of her Constitutional Rights. As a result of the nature of Defendant's outrageous conduct, Plaintiff is entitled to recover punitive damages.

98. WHEREFORE, Plaintiff prays this Court:

A. Enter judgment in favor of Plaintiff and against Defendant Wells Fargo;

B. Award Plaintiff compensatory damages against Defendant Wells Fargo for violating Plaintiff's constitutional rights under color of state law;

C. Award Plaintiff punitive damages for Defendant Wells Fargo's outrageous conduct in depriving Plaintiff's right to Due Process of law under the Fourteenth Amendment;

D. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

E. Allow such other and further relief to which Plaintiff may be entitled.

## COUNT 2

### BREACH OF CONTRACT (PRIVATE CONTRACT CLAIM)

99. Plaintiff incorporates herein by reference the allegations made in Paragraphs through 97, as if each were set forth herein.

100.     Defendant, as a successor or assign to a party to the Note and Deed of

Trust, is bound in contractual privity with Plaintiff.

101.     Defendant, in pursuing a trustee's sale in violation of the terms of the

contracts and in violation of applicable statutes and law, and in violation of the

applicable federal restrictions incorporated into the contracts with the Plaintiff,

breached their contracts with the Plaintiff.

102.     In pursuing a trustee's sale in violation of the contracts and applicable

law, Defendant breached the duty of good faith and fair dealing implied in

every contract.

103.     As a result of the Defendant's breach of contracts, Plaintiff has suffered

damages in the form of losing her home, attorney's fees, costs, and other

damages.

104.     As a result of Defendant's intentional Constitutional torts alleged

herein, Plaintiff is also entitled to punitive damages for Defendant's breach of

contracts.

105.     As this matter arises out of contract, Plaintiff is entitled to her attorney's

fees and costs pursuant to the contracts and pursuant to A.R.S. § 12-341.01.

106.     WHEREFORE, Plaintiff prays this Court:

A. Enter judgment in favor of Plaintiff and against Defendant Wells Fargo;

B. Award Plaintiff damages against Defendant for violating the contract;

C. Award Plaintiff punitive damages for Defendant Wells Fargo's outrageous

conduct;

D.  Award Plaintiff her attorney's fees and costs pursuant to the contracts and pursuant to A.R.S. § 12-341.01; and

E. Allow such other and further relief to which Plaintiff may be entitled.

## COUNT 3

**FEDERAL 5TH AMEND. DUE PROCESS/DEPRIVATION OF PROPERTY**

107.     Plaintiff incorporates herein by reference the allegations made in Paragraphs through 105, as if each were set forth herein.

108.     Plaintiff had protected property interests in her home and in other property as described herein.

109.     Defendant's intentional conduct alleged herein, deprived Plaintiff of her real and personal property in violation of the federal Due Process protections of the Fifth Amendment, and in violation of the federally guaranteed prohibition against depriving property without due process of law.

110.     As a result of Defendant's intentional conduct, Defendant proximately caused damages to Plaintiff including the loss and deprivation of real and personal property, pain and suffering and mental and emotional distress, and other actual damages.

111.     Defendant acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of her Constitutional Rights. As a result of the nature of Defendant's outrageous conduct, Plaintiff is also entitled to recover punitive damages.

112.    As a result of these Constitutional violations, Plaintiff is entitled to recover attorney fees pursuant to 42 U.S.C. § 1988, and the Equal Access to Justice Act Subsections (b) and (d).

113.    WHEREFORE, Plaintiff prays this Court:

A. Enter judgment in favor of Plaintiff and against Defendant Wells Fargo;

B. Award Plaintiff compensatory damages against Defendant Wells Fargo for violating Plaintiff's Constitutional rights under color of federal law;

C. Award Plaintiff punitive damages for Defendant Wells Fargo's outrageous conduct in depriving Plaintiff of her real and personal property in violation of Due Process under the Fifth Amendment;

D. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, the Equal Access to Justice Act, subsections (b) and (d), and any other applicable provisions of law; and

E. Allow such other and further relief to which Plaintiff may be entitled.

DATE: November 22, 2016            s/  Vince Rabago, Esq._____
                                   VINCE RABAGO LAW OFFICE PLC
                                   Attorneys for Plaintiff Kakarala

1

## CERTIFICATE OF SERVICE

2

3

   I hereby certify that on November 22, 2016, I electronically transmitted the

4

foregoing document to the Clerk's office using the ECF system for transmittal and

5

filing of Notice of Electronic Filing, and for service pursuant to L.R. 5.5(h) and L.R.

6

15(a), and Rule 5(b)(2)(E) and Rule 5(b)(3) of Fed. R. Civ. Proc., to the following

7

ECF registrants:

8

9

10

Gregory Marshall, Esq.
Snell and Wilmer

11

ONE ARIZONA CENTER
400 E. Van Buren

12

Phoenix AZ 85004-2202

13

gmarshall@swlaw.com

14

Andrew M. Jacobs, Esq.

15

Snell & Wilmer LLP
One South Church Avenue, Suite 1500

16

Tucson, AZ 85701-1630

17

Telephone: (520) 882-1200
Facsimile: (520) 884-1294

18

ajacobs@swlaw.com

19

Attorneys for Wells Fargo Bank N.A.

20

21

22

   s/     Vince Rabago

23

Vince Rabago
Attorney for Plaintiff

24

25

26

27

28

26